Cal-Glen Development Corporation v. Commissioner.
Cal-Glen Dev. Corp. v. Commissioner
Docket No. 2165-67.
United States Tax Court
T.C. Memo 1969-42; 1969 Tax Ct. Memo LEXIS 253; 28 T.C.M. (CCH) 240; T.C.M. (RIA) 69042; February 27, 1969, Filed Patrick E. Ryan, Suite 912, 6380 Wilshire Blvd., Los Angeles, Calif. , for the petitioner. Michael Pargament, for the respondent. FAY
Memorandum Findings of Fact and Opinion FAY, Judge: Respondent determined a deficiency of $24,704.31 in petitioner's income tax for the taxable year 1963. Some matters raised in the pleadings were conceded in whole or in part prior *254 to the trial herein. The issues remaining for decision are (1) whether petitioner is entitled to deduct certain payments as interest, (2) whether petitioner is entitled to a net operating loss carryforward deduction, and (3) whether petitioner is limited to a carryover tax basis for certain land it owns. Findings of Fact Some of the facts were stipulated. The stipulation of facts, together with the exhibits attached thereto, is incorporated herein by this reference. Petitioner is a calendar-year taxpayer. It filed its Federal corporate income tax return on the cash basis of accounting with the district director of internal revenue, Los Angeles, California. Its principal place of business was Glendale, California, when it filed its petition in this case. On July 7, 1953, Daniel Herwick (hereinafter referred to as Herwick), Paul Bills (hereinafter referred to as Bills), Aylward Schwarz (hereinafter referred to as Schwarz), and their wives purchased as equal joint tenants 38 acres of undeveloped land in Glendale, California. They acquired the land from a bank through a foreclosure sale. The purchase price was $20,000. The buyers paid $5,000 in cash and gave the seller a $15,000 *255 purchase money Deed of Trust for the balance of the price. The land is hereinafter referred to as the Glendale property. On June 16, 1955, Bills, Herwick, and their wives bought the interest of Schwarz and his wife in the Glendale property. Schwarz and his wife sold their interest in the property because they could not keep current on their share of the payments on the purchase money Deed of Trust. The purchase price for the Schwarzes' interest was $4,415 in cash, plus the buyers' assumption of the sellers' undivided one-third liability for the encumbrance against the land. Schwarz and his wife asked only to get out of the land what they had put into it. On July 11, 1955, Bills, Herwick, and their wives sold an undivided one-third interest in the Glendale property to Oswald Higgs (hereinafter referred to as Higgs) and his wife. [1] Higgs was in the real estate business. Bills and Herwick brought him in as a co-owner because he could help them develop the property. Also, Higgs had a client from whom money could be borrowed to finance the development. On August 10, 1955, Higgs, Herwick, and Bills incorporated *256 petitioner under the laws of California. Each incorporator contributed $500 to petitioner's capital. Thus, petitioner's total initial capital was $1,500. Each incorporator received one-third of petitioner's stock. The initial shareholders became petitioner's officers and directors. There were no changes in petitioner's officers, directors, and shareholders between the date of its incorporation and the date of the trial herein. Petitioner was formed to acquire raw land, improve and subdivide it, and sell subdivided parcels of it to customers. On October 11, 1955, Bills, Herwick, Higgs, and their wives transferred the Glendale property to petitioner. In return for the property the transferors received a $60,000 note from petitioner. The note was payable in two years, bore annual interest of 8 percent, and was secured by a second Deed of Trust. [2] In addition to giving the transferors the note, petitioner assumed the liability for the existing encumbrance against the land. The amount of the encumbrance was $11,215.77. *257 On October 11, 1955, the transferors' bases in the Glendale property were as follows: The Billses
$ 6,667
The Herwicks
6,667
The Higgses 8,153
$21,487 242 On their Federal income tax returns, Bills and Higgs treated the transfer to petitioner of their interests in the Glendale property as a sale. The record does not disclose how Herwick treated the transfer on his Federal income tax return. On October 19, 1955, petitioner borrowed $15,000 from J. E. Chester (hereinafter referred to as Chester). Petitioner evidenced the debt with a note for $15,000. The note bore annual interest of 8 percent and was secured by a first Deed of Trust on the Glendale property. Petitioner used part of the money borrowed from Chester to pay the $11,215.77 encumbrance on the property. [3]
Petitioner was inactive in 1955. In 1956 it began development activities and made several sales. The development activities consisted of grading, paving, and on-site and off-site improvements. The cost of the improvements *258 was $37,216.32. On April 20, 1956, petitioner borrowed an additional $20,000 from Chester. Petitioner substituted a new note for the old one. As in the case of the old note, the new one was secured by a first Deed of Trust on the Glendale property. [4] On April 20, 1956, petitioner also borrowed $7,000 from Higgs and his wife. Petitioner evidenced the loan with a secured note bearing annual interest of 8 percent. [5]
The following schedule shows the payments which petitioner made on its $60,000 note to Bills, Herwick, and Higgs: Date
Higgs
Bills
Herwick
Mode of Payment
9/5/56
$1,000
$1,000
$1,000
cash
12/31/56
1,000
1,000
1,000
unsecured note
2/8/57
1,000
1,000
1,000
unsecured note
3/13/57
1,000
1,000
1,000
unsecured note
4/30/57
1,000
1,000
1,000
cash
10/15/57
$1,000
$1,000
$1,000
cash
11/22/57
1,000
1,000
1,000
cash
1/31/59
4,000
5,000
5,000
unsecured note
8/9/63
1,000
unsecured note
11/7/63
8,000
8,000
8,000
cash
*259 Total received by each in cash: $12,000 Total received by each in unsecured notes: $8,000 Each of petitioner's payments with unsecured notes effected a partial release by its shareholders of the lien given them by the $60,000 note. By taking the unsecured notes, the shareholders changed their positions in part from secured creditors to unsecured creditors. In addition to the unsecured notes which petitioner gave its shareholders in partial payment of the principal of the $60,000 note, it gave them $3,839.98 of unsecured notes in payment of interest on the $60,000 note. On December 31, 1958, petitioner made a cash payment of $1,350 on its unsecured notes to its shareholders. In its Federal corporate income tax return for the taxable year 1963, petitioner deducted payments to its shareholders of $34,321.02 as interest on its $60,000 note. Petitioner also deducted a net operating loss carryforward of $8,050.08. Finally, in computing its results from selling various parcels of the Glendale property, petitioner claimed a total cost basis of $71,215.77 on the property. [6]
*260 In his statutory notice of deficiency for the taxable year 1963, respondent took the position that the transfer of the Glendale property to petitioner was an equity contribution, not a sale. He accordingly denied petitioner's interest deduction on the ground that the $60,000 note was equity, not a true indebtedness. He also limited petitioner to a carryover tax basis for the Glendale property equal to the total of the three shareholders' bases for the property prior to its transfer to petitioner. Finally, respondent denied petitioner's deduction of a net operating loss carryforward on the ground that it consisted of (1) erroneous deductions in prior years of "interest" payments on the $60,000 "note" and (2) erroneously computed results of sales in prior years of parcels of the Glendale property caused by petitioner's claim of a cost basis of $71,215.77 for the property. Opinion The issues are (1) whether petitioner is entitled to deduct payments to its shareholders of $34,321.02 as interest, (2) whether petitioner is entitled to a net operating loss deduction of $8,050.08, and (3) whether 243 petitioner is limited to a carryover tax basis of $21,487 for the Glendale property. *261 The parties agree that all three issues hinge on the question whether the transfer to petitioner of the Glendale property by the shareholders was a sale or was an equity contribution. [7]
This question has been litigated before this Court many times. In Emanuel N. (Manny) Kolkey, 27 T.C. 37, 59 (1956), affd. 254 F. 2d 51 (C.A. 7, 1958), we set out the following inquiries as among the criteria to be used in deciding the question: Was the capital and credit structure of the new corporation realistic? What was the business purpose, if any, of organizing the new corporation? Were the noteholders the actual promoters and entrepreneurs of the new adventure? Did the noteholders bear the principal *262 risks of loss attended upon the adventure? Were payments of "principal and interest" on the notes subordinated to dividends and to the claims of creditors? Did the noteholders have substantial control over the business operations; and if so, was such control reserved to them as an integral part of the plan under which the notes were issued? Was the "price" of the properties, for which the notes were issued, disproportionate to the fair market value of such properties? Did the noteholders, when default of the notes occurred, attempt to enforce the obligations? See also the discussion of the same question in Burr Oaks Corp., 43 T.C. 635 (1965), affd. 365 F. 2d 24 (C.A. 7, 1966), certiorari denied 385 U.S. 1007 (1967). The evidence in the present case consists almost entirely of a stipulation of facts with attached exhibits. There were a few pages of testimony. For the most part, however, the testimony pertained to uncontested facts. The evidence presented does no more than raise doubts as to the outcome of the Kolkey criteria. It falls far short of resolving the doubts in favor of petitioner. In view of the presumption of correctness which *263 attaches to respondent's determination in the statutory notice of deficiency, we must conclude that the transfer of the Glendale property to petitioner was an equity contribution, not a sale. We accordingly hold that petitioner is not entitled to (1) an interest deduction for payments of $34,321.02 to its shareholders, (2) a net operating loss deduction of $8,050.08, and (3) any greater tax basis for the Glendale property than $21,487. In view of this holding, it is not necessary to discuss the contentions and arguments of the parties concerning the fair market value of the Glendale property on the date of its transfer to petitioner. Decision will be entered under Rule 50. Footnotes
1. The record is silent as to the purchase price of the Higgses' interest.↩
2. In its reply brief, petitioner makes the following statement about the $60,000 note: "The transferors subsequently allowed their security to be subordinated to certain loans obtained by petitioner for development of the property."↩
3. This payment apparently removed the original first Deed of Trust from the Glendale property and made it possible to give Chester a first Deed of Trust on the property.↩
4. The two loans from Chester are apparently among the loans referred to in the statement quoted in footnote 2, supra.↩
5. Petitioner redeemed this note in two payments. The first was $2,500 on April 30, 1957. The second was $4,500 on May 23, 1958.↩
6. Petitioner computed the basis by adding the liabilities it assumed on the Glendale property, $11,215.77, to the face amount of the note given to its shareholders, $60,000.↩
7. With respect to the basis issue, the parties agree that if the transfer was an equity contribution, it came within sec. 351, I.R.C. It would follow from this that petitioner is limited to a carryover basis for the Glendale property by sec. 362(a), I.R.C. If on the other hand the transfer was a bona fide sale, it would follow that petitioner is entitled to a cost basis under sec. 1012, I.R.C.↩